Upon review of the competent evidence of record, the Full Commission, upon reconsideration of the evidence, affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner. The Full Commission affirms the finding that the covering machine job aggravated plaintiff's medical condition, but reverses findings and conclusions that plaintiff's refusal to accept the lead operator position was justified and that plaintiff is entitled to continuing total disability compensation.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Order as:
 STIPULATIONS
1. All parties hereto are subject to and bound by the provisions of the North Carolina Workers' Compensation Act; and the employer is self-insured.
2. Plaintiff sustained injuries on 30 September 1994.
3. Plaintiff's actual average weekly wage at the time of her injury, including overtime and all allowances, was $355.39, according her a compensation rate of $236.94 per week subject to further verification from the defendant's records.
4. Plaintiff was paid temporary total disability benefits from 2 February 1995 through 19 March 1995, and temporary partial disability benefits from 20 March 1995 through 29 May 1995. Plaintiff returned to work 1 November 1995 through 16 May 1996 working full-time at her pre-injury wages.
5. The issues for determination are: (1) whether plaintiff is entitled to temporary total, temporary partial, permanent partial disability benefits and medical compensation from May 1995 through November 1995, and subsequent to May 1996; (2) whether plaintiff unjustifiably refused employment offered by the employer within her physical capacity?
6. Stipulated exhibits at the hearing were: (1) eleven pages of Industrial Commission Forms, (2) nineteen pages of medical records, (3) a one page letter dated May 16, 1996 signed by Harold Dixon, (4) plaintiff's response to defendant's Interrogatories, (5) a video tape of plaintiff's job with the employer and (6) three pages of a Form 22, which indicates pre-injury and post-injury earnings.
***********
Based upon the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was 37 years old at the time of the hearing. She graduated from high school and has worked for a drafting company, has performed rabies vaccinations, has provided babysitting services, and then worked for a textile company.
2. Plaintiff went to work for the defendant in February 1987. Defendant produces fine elastic yarn that is used in women's pantyhose and other fabrics. Plaintiff began having problems with her hands and wrists in 1994. The parties executed a Form 21 agreement, and plaintiff began treating with Dr. Edward Hines in February 1995. During this time, plaintiff was paid total disability benefits. Dr. Hines diagnosed plaintiff with carpal tunnel syndrome in her left arm and hand. She had surgery in February 1995. After the surgery, Dr. Hines kept plaintiff out of work for one month, but then returned her to work at four hours a day. Plaintiff worked four hours a day from 19 March 1995 until 29 May 1995. At that time, Dr. Hines noted plaintiff was three months post-surgery, and he released her to return to work full time.
3. On 26 May 1995, two days after being released to return to work full time, plaintiff went to see Dr. James Califf, an orthopedic surgeon of her own choosing. After an examination, Dr. Califf's impression was that plaintiff suffered persistent carpal tunnel syndrome. He recommended that plaintiff continue working only four hours per day from 29 May 1995 until 9 June 1995. He administered injections and referred plaintiff to physical therapy.
4. By letter received by the Industrial Commission on 2 June 1995, plaintiff requested that Dr. Califf be approved as her treating physician, which was within a reasonable time after procuring her doctor. However, the Commission did not rule on plaintiff's motion.
5. On 9 June 1995, Dr. Califf took plaintiff out of work and recommended that she not return to any type of repetitive job duties, due to her continuing problems with symptoms of carpal tunnel syndrome. Due to these continued symptoms, plaintiff was unable to earn wages until 1 November 1995, when she returned to work with defendant full time.
6. On 21 July 1995, Dr. Califf assigned plaintiff a five percent (5%) permanent partial disability rating to her left hand. Dr. Califf also opined that plaintiff's persistent tenosynovitis and carpal tunnel syndrome symptoms were caused by the repetitive nature of plaintiff's job duties with the defendant.
7. Plaintiff continued working full time until 16 May 1996. At that time, she approached her supervisor with complaints of swelling, numbness, and aching in her left hand and arm. Because of the pain and swelling, plaintiff believed that she could no longer operate the ICBT machines (the type of covering machine involved in her job), and, therefore, she exercised the option of being laid off.
8. Prior to being laid off, plaintiff was offered a lead operator position, a supervisory job available on third shift. Plaintiff was physically able to perform this position, but she refused it for personal reasons. Plaintiff had applied for the position, but wanted to work on first shift rather than on third shift. The first shift position was currently filled and, therefore, not available to plaintiff at that time. Plaintiff does not dispute that the lead operator position afforded her an opportunity to earn the same or greater wages than she earned in the ICBT position. Rather, plaintiff contends that her refusal of the job was justified because she has three young children, her husband is disabled, and she preferred not to work third shift because of her family situation. However, there is no evidence of the nature of the husband's disability or why he would not be able to attend to the children in the evenings after plaintiff left for third shift. While plaintiff may not have desired to work third shift, her refusal was not related to her compensable injury and was unjustified under the circumstances. The proffered job was suitable to plaintiff's skills and physical ability and demonstrated plaintiff's ability to earn wages competitively.
9. Beginning in the fall of 1996, plaintiff participated in a vocational retraining program through the office of vocational rehabilitation. She was enrolled in a two-year program for an associate degree in early childhood education at Alamance Community College. She has attended full time. Part of her course work has required her to work in a day care facility four days a week organizing activities for children ages two to three years. She has also prepared handwritten and typewritten work as part of her assignments.
10. At the time of the hearing before the deputy commissioner, plaintiff's left arm and hand were sometimes aggravated by certain activities. She would also drop things on occasion. In her work in child care labs, she primarily used her right hand in assisting the children.
11. An ergonomic analysis indicated that the covering machine job which plaintiff performed in her employment with defendant placed her at a low risk for cumulative trauma disorder. However, defendant entered into a Form 21 Agreement for plaintiff's repetitive motion complaints, and the covering machine job did in fact aggravate plaintiff's physical condition, most likely due to her preexisting predisposition and her weakened condition following surgery.
12. Defendant paid plaintiff total wage loss benefits from 2 February 1995 through 19 March 1995, and partial wage loss benefits from 20 March 1995 until 29 May 1995.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to additional partial disability compensation from 29 May 1995 through 8 June 1995, based on the difference between $236.94 per week and two-thirds of the wages she earned during this period. G.S. § 97-30.
2. Plaintiff is entitled to additional total disability compensation at the rate of $236.94 per week from 9 June 1995 until 1 November 1995. G.S. § 97-29.
3. Defendant shall pay all medical expenses incurred by plaintiff as a result of her compensable injury on 30 September 1994 and resulting carpal tunnel syndrome, including the medical expenses incurred as a result of her visits to Dr. James Califf. G.S. § 97-25.
4. Plaintiff sought approval of Dr. Califf as her treating physician within a reasonable time. Dr. Califf is hereby approved as plaintiff's treating physician. G.S. § 97-25.
5. Plaintiff unjustifiably refused suitable employment offered by defendant in May 1996, and compensation is suspended during the period of refusal. G.S. § 97-32.
6. Plaintiff's counsel is entitled to a reasonable attorney's fee of 25% of the compensation due plaintiff.
***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Defendant shall pay partial disability compensation from 29 May 1995 through 8 June 1995, computed as the difference between two-thirds of the wages earned during each week and $236.94. This amount shall be paid in a lump sum, subject to the attorney's fee approved herein.
2. Defendant shall pay total disability compensation to plaintiff at the rate of $236.94 per week from 9 June 1995 until 1 November 1995, paid in a lump sum, subject to the attorney's fee approved herein.
3. Defendant shall pay all medical expenses incurred by plaintiff as a result of her compensable injury on 30 September 1994 and resulting carpal tunnel syndrome, when bills are submitted to the Industrial Commission pursuant to approved Industrial Commission procedure.
4. Defendant shall deduct twenty-five percent from the compensation due plaintiff for payment of plaintiff's attorney's fees and pay this amount directly to plaintiff's counsel.
5. Defendant shall pay the costs.
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
S/_____________ CHRISTOPHER SCOTT COMMISSIONER